NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0477n.06

No. 20-4183

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DOMINGO JIMENEZ-LORENZO,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Oct 25, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Domingo Jimenez-Lorenzo, a native and citizen of Guatemala, petitions for review of a decision of the Board of Immigration Appeals (BIA) denying his request for asylum and withholding of removal. He argues that he offered sufficient evidence both of past persecution and of fear of future persecution to justify a grant of relief. As did the immigration judge and the BIA, we hold that, even if Jimenez-Lorenzo could establish that he has been or will be persecuted in Guatemala, he has not shown that such persecution was based upon a protected ground. We thus deny the petition for review.

### FACTUAL AND PROCEDURAL BACKGROUND

As an unaccompanied fifteen-year-old, Jimenez-Lorenzo traveled from Guatemala to enter the United States without inspection in August 2014. He then filed a timely application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT)

in April 2015. Jimenez-Lorenzo subsequently conceded removability after admitting that he entered the country without inspection.

At a later evidentiary hearing before an immigration judge, Jimenez-Lorenzo claimed that he had suffered past persecution and feared future persecution both because of his religion and because of his membership in a particular social group, which he defined as indigenous Guatemalan youth church members. In support of his claim, Jimenez-Lorenzo recounted how, in June 2014, he was walking to his Seventh-Day Adventist church in his Guatemalan hometown when four members of the 18th Street Gang approached him and tried to convince him to join the group. Despite the gang members' assertion that he would "have a bunch of good things" if he joined them, Jimenez-Lorenzo declined their offer because he "assume[d] that these individuals w[ould] ask [him] or force [him] to steal if [he] bec[a]me part of the group, or even more, maybe kidnap someone." In response, the gang members told Jimenez-Lorenzo, "[I]f we ever see you again and you are refusing to join us, we have to hit you."

Two weeks later, Jimenez-Lorenzo was walking to a neighborhood convenience store when three of the gang members who had previously accosted him—together with three other gang members—confronted him, pushed him to the ground, and threatened more severe actions if he still refused to join the gang the next time they saw him. Even though his attackers offered no reason for their actions other than their desire to increase gang membership, Jimenez-Lorenzo felt that the confrontation was precipitated by the gang's dislike of his church attendance. As he testified, "They want me to join them. They don't like that I am doing good things at church. They don't like that I do not do the horrible things that they are doing. That's why they don't like me. That's why they want me to become part of their group."

In early August 2014, Jimenez-Lorenzo visited the same convenience store once again. On that occasion, he was accosted by gang members who referred to his prior refusals to join the group. They hit him in the face and kicked him in the stomach and back. As a result of that attack, Jimenez-Lorenzo suffered bruises and swelling that were treated with medication at a local hospital to ease inflammation and pain.

Jimenez-Lorenzo saw members of the 18th Street Gang once more after he was beaten and kicked, but the gang did not bother him at that time because he was with his parents in a crowded, busy section of town. Nevertheless, he made the decision to leave Guatemala on August 12, 2014, and, like three of his siblings, he traveled to the United States to work and to send money back to Guatemala to help his parents and a younger sibling.

Jimenez-Lorenzo further testified regarding his belief that if he were to return to Guatemala, gang members would find him, kidnap him, beat him, and eventually kill him. Moreover, he claimed that the local police would not save him from physical attack because law enforcement officials demand large sums of money for such protection—money that he and his Guatemalan relatives do not have.

At the conclusion of the hearing, the immigration judge found Jimenez-Lorenzo to be a credible witness. Nevertheless, the immigration judge denied the request for asylum because she did not believe that Jimenez-Lorenzo was targeted for his religion or his membership in a particular social group. She explained:

> There was *no evidence* that the gang members who harmed him or whom he feared were interested in his religion. There was more evidence that they simply were trying to recruit new members, which unfortunately is a common problem in Guatemala. The court further finds there's *no evidence* the asserted particular social group is socially distinct within the society of Guatemala. Again, unfortunately, Guatemalan gangs do try to recruit many young men, but gang recruitment is not a basis for an asylum claim which is a well-established fact.

(Citing *Matter of E-A-G-* 24 I&N Dec. 591 (BIA 2008)) (emphasis added). The immigration judge also found no basis for granting Jimenez-Lorenzo withholding of removal or relief under the CAT.

In reviewing the immigration judge's denials of asylum and withholding of removal,[1] the BIA concluded that Jimenez-Lorenzo's mere perceptions and beliefs regarding the motivation for the 18th Street Gang's encounters with him were insufficient to establish that any protected characteristic—rather than a mere desire to increase gang membership—was the basis for the alleged persecution and feared future persecution. In the absence of any relevant evidence to support Jimenez-Lorenzo's claims, the BIA dismissed the appeal of the denials of asylum and withholding of removal.

## DISCUSSION

**Standard of Review**

When the BIA issues its own decision in a matter before it, we review that decision "as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). When the BIA simply adopts the reasoning of the immigration judge, however, we also review the immigration judge's decision. *Id.* We review questions of law *de novo*, but factual findings under a substantial-evidence standard. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 259 (6th Cir. 2020). Under that substantial-evidence standard, findings of fact made by an agency "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks and citation omitted). We may reverse those factual findings only if the evidence in the record "not only supports a contrary

---

[1] In his appeal of the immigration judge's determination to the BIA, Jimenez-Lorenzo made no mention or argument regarding his claim under the CAT. The BIA thus found that portion of the claim for relief to have been waived. Furthermore, Jimenez-Lorenzo makes no effort to revive that claim in his petition for review in this court.

conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (citing *Elias-Zacarias*, 502 U.S. at 481 n.1).

**Request for Asylum**

To establish his entitlement to asylum, Jimenez-Lorenzo must satisfy both prongs of a two-step inquiry. *Kouljinski v. Keisler*, 505 F.3d 534, 541 (6th Cir. 2007). First, he must qualify as a "refugee" as that term is defined in 8 U.S.C. § 1101(a)(42)(A), and second, he must show that his application "merits a favorable exercise of discretion by the Attorney General." *Id.* (citations omitted).

> In pertinent part, 8 U.S.C. § 1101(a)(42)(A) provides:
>
> The term "refugee" means (A) any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

An asylum applicant bears the burden of proving that he or she is a refugee, "within the meaning of section 1101(a)(42)(A) . . . . To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be *at least one central reason* for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). *See also Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010).

Regardless of whether Jimenez-Lorenzo would merit "a favorable exercise of discretion by the Attorney General," the evidence in the record before us does not support a determination that Jimenez-Lorenzo meets the statutory definition of a "refugee." Even presuming that the threats to, and physical attacks on, Jimenez-Lorenzo constitute "persecution"—and that indigenous Guatemalan youth church members can be considered a "particular social group"—

absolutely no evidence offered by Jimenez-Lorenzo indicates that "at least one central reason" for such persecution was his religion or membership in a recognizable, particular social group.

At his evidentiary hearing, Jimenez-Lorenzo did offer an exhibit entitled "Interface of Churches and Organised Crime in Latin America." In that article, the author posited that criminal organizations' persecution of Christians generally is motivated by two elements:

> The primary reason for persecution is that organised crime sees Christians as a threat when they openly oppose their activities, especially when they get involved in social programmes or in politics.

> The second reason, that often inspires the first one, is the view that Christian faith is not compatible with their ideals, and that they fear Christians will influence members of the community or even members of their own organisations to oppose their activities.

In his own testimony before the immigration judge, Jimenez-Lorenzo echoed those same reasons for why he thought that the gang members were attacking him.

Importantly, though, the only evidence that can be gleaned from the administrative record in this case is that the 18th Street Gang targeted, attacked, and injured Jimenez-Lorenzo, not because his Christian ideals were incompatible with the goals of the gang, but rather because the gang members were upset that Jimenez-Lorenzo would not join their organization. In fact, Jimenez-Lorenzo himself testified that, while he was being attacked, and later, when he was threatened with future violence, the gang members spoke only of his recalcitrance in joining forces with them—not of any opposition to religion, a particular religious denomination, or religious values. Consequently, Jimenez-Lorenzo has failed to establish the necessary nexus between a protected status and any past or potential persecution. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 500 (6th Cir. 2015) ("[F]orced recruitment alone does not establish the nexus of persecution 'on account of' a protected statutory ground." (citing *Elias-Zacarias*, 502 U.S. at 482)). In the absence of any proof whatsoever that either Jimenez-Lorenzo's religion or his particular-social-

group membership was "at least one central reason" for the alleged persecution he suffered, we conclude that Jimenez-Lorenzo cannot establish his entitlement to a grant of asylum.

**Request for Withholding of Removal**

Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A) governing withholding of removal, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." To justify a grant of withholding of removal under that statutory provision, therefore, a petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (citations omitted). Additionally, individuals seeking withholding of removal "must demonstrate that a protected ground was *at least one reason* for their persecution." *Guzman-Vazquez*, 959 F.3d at 274 (emphasis added).

In *Guzman-Vazquez*, we held that applicants for withholding of removal did not, like individuals seeking asylum, need to prove that the protected ground was one of the *central* reasons for the persecution; instead, a petitioner need show only that a protected ground was *one* such reason. *Id.* That somewhat lesser burden of proof is of no help to Jimenez-Lorenzo, however. Because the immigration judge correctly found that the administrative record contains *no* evidence that the 18th Street Gang targeted Jimenez-Lorenzo because of his religion or his status as an indigenous Guatemalan youth church member, Jimenez-Lorenzo cannot establish the necessary nexus between a protected ground and past persecution or fear of future persecution that would justify a grant of withholding of removal.

**CONCLUSION**

Any persecution that Jimenez-Lorenzo suffered was due to his refusal to join the 18th Street gang, not because of a statutorily protected ground.  Although gang violence and retaliation for refusal to join gangs are terrifying and tragic realities in many parts of the world, until Congress exhibits the courage to reform our nation's immigration laws to promote the compassion and humanity that our nation purports to exemplify, people like Jimenez-Lorenzo will continue to suffer and be forced to live lives marked by fear and brutal violence.  Under the laws as they now exist, we are constrained to conclude that Jimenez-Lorenzo has failed to establish the required nexus to justify a grant either of asylum or withholding of removal.  We therefore DENY his petition for review.